1  JONATHAN H. BLAVIN (State Bar No. 230269)
   jonathan.blavin@mto.com
2  ELLEN M. RICHMOND (State Bar No. 277266)
   ellen.richmond@mto.com
3  JOSHUA PATASHNIK (State Bar No. 295120)
   josh.patashnik@mto.com
4  JOHN B. MAJOR (State Bar No. 306416)
   john.major@mto.com
5  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
6  San Francisco, California 94105-2907
   Telephone:  (415) 512-4000
7  Facsimile:  (415) 512-4077

8  JOHN W. SPIEGEL (State Bar No. 78935)
   john.spiegel@mto.com
9  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
10 Los Angeles, California 90071-1560
   Telephone:  (213) 683-9100
11 Facsimile:  (213) 687-3702

12 Attorneys for Plaintiff Airbnb, Inc.

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                    SOUTHERN DIVISION

17

| | |
|---|---|
| AIRBNB, INC., | Case No. 8:16-cv-1398 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| CITY OF ANAHEIM, | |
| Defendant. | |

For its complaint, Plaintiff Airbnb, Inc. ("Airbnb") alleges as follows:

## INTRODUCTION

1. This is an action under 42 U.S.C. § 1983, the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin and declare unlawful the enforcement against Airbnb by Defendant City of Anaheim (the "City" or "Anaheim") of Sections 4.05.120 and 4.05.130 of Ordinance No. 6374 (the "Ordinance"), passed by the Anaheim City Council on July 12, 2016 and purportedly effective on August 11, 2016.

2. The Ordinance directly conflicts with, and is preempted by, the Communications Decency Act of 1996, 47 U.S.C. § 230 (the "CDA"). The Ordinance seeks to hold "hosting platforms"—defined by the law as entities that "*allow[] the owner to offer to list or advertise*" a rental on the "web site provided" by the platform, § 4.05.030(E)[1] (emphasis added)—criminally and civilly liable for publishing, and for failing to screen and remove, their users' advertisements of rentals that lack City-issued permits or are otherwise not compliant with "any" City law or regulation, § 4.05.120.020. As such, the Ordinance unquestionably treats online platforms such as Airbnb as the publisher or speaker of third-party content and is completely preempted by the CDA. In addition, the law violates the First Amendment as an impermissible content-based regulation. It also violates both the First Amendment and the Due Process Clause of the Fourteenth Amendment by imposing criminal penalties on hosting platforms without requiring a showing that the platform knew a rental in a listing was unpermitted or otherwise not in compliance with City law before it published the listing. The enforcement of the Ordinance against Airbnb should be immediately and permanently enjoined.[2]

---

[1] Unless otherwise noted, all references in this format are to the Ordinance, which amends the City's Municipal Code.

[2] This action is both an as-applied and a facial challenge against the Ordinance. It is an as-applied challenge in that it seeks only to prohibit the City from enforcing certain

3. Since May 2014, Anaheim law has permitted residents to rent out their residential units on a short-term basis if they obtain a permit from the City and their rentals meet other conditions. §§ 4.05.100.0109, 4.05.100.0112.

4. The Ordinance fundamentally changes the City's scheme for regulating short-term rentals. Previously, the City imposed penalties only on owners who violated the short-term rental law. The Ordinance, by contrast, imposes penalties on not only the owner or leaseholder of a short-term rental property, but also on the hosting platform (and the renter). *See* §§ 4.05.130 (providing for liability for "owner[s]," "responsible person[s]," and "hosting platform[s]"); 4.05.030(J) (defining owner); 4.05.030(O) (defining "responsible person" as "an occupant" of the rental).

5. With respect to hosting platforms specifically, the Ordinance provides that "[n]o hosting platform shall list or advertise a short-term rental for which the city has not issued a permit." § 4.05.120.010. It further requires hosting platforms, "[u]pon written or electronic notification from the city that the city has not issued a permit for a [listed] short term rental," to remove the listing from the platform within ten calendar days. *Id.* The "hosting platform thereafter shall not list or advertise the short term rental without written certification from the city that the required permit has been issued"—even if the short-term rental is in compliance with law. *Id.* Last, the Ordinance broadly states that a "hosting platform shall not [] facilitate"— defined as "*allowing the owner to offer to list or advertise* the short-term rental on the Internet web site"—"the occupancy of a short-term rental if the occupancy will violate any ordinance, regulation or law of the city." §§ 4.05.120.020; 4.05.030(E) (emphasis added).

6. The Ordinance thus requires platforms to verify that each listing on their sites has a valid permit and that the rental in question complies with *all*

---

provisions of the Ordinance against Airbnb; and it is a facial challenge in that certain provisions, on their face, violate the law and cannot be enforced against any hosting platform in any set of factual circumstances.

aspects of City law before publishing the listing—including that the rental does not have "double-keyed dead bolt locks" on "exit doors" and has "[s]moke alarms . . . installed in all habitable areas except the kitchen," § 4.05.100.0103(b), (k).

7. The enforcement of the Ordinance against Airbnb is preempted by the CDA, which aims "to promote the continued development of the Internet" and "to preserve" its "vibrant and competitive free market." 47 U.S.C. § 230 (b)(1)-(2). In furtherance of these goals, the CDA expressly preempts state and local laws that treat a website "as the publisher or speaker of any information provided by another information content provider." *Id.* (c)(1), (e)(3). By imposing civil and criminal penalties on Airbnb for publishing and for failing to screen and remove listings that lack a permit or do not comply with other City law, the Ordinance treats Airbnb as the publisher or speaker of those listings, whose content is provided by third-party hosts. The Ordinance therefore violates and is preempted by the CDA.

8. The Ordinance also violates Airbnb's First Amendment rights because it is a content-based restriction on speech, in the form of rental listings. The Ordinance seeks to punish Airbnb for publishing listings advertising rentals that do not comply with City law. To justify this content-based restriction on speech, the City bears the burden of showing that the Ordinance is narrowly tailored to further a substantial government interest. The City cannot carry this burden because, instead of targeting speech, the City instead could simply enforce its short-term rental laws directly against hosts who violate them—as the City acknowledges it already does successfully. Further, the Ordinance will have an impermissible chilling effect on speech because it will force Airbnb to remove even lawful listings that are in compliance with Anaheim law, because hosting platforms often will not be able to tell from the face of a listing whether that listing actually has a permit or otherwise fully complies with other City laws.

9. The Ordinance also violates Airbnb's rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment because it

seeks to impose criminal penalties on hosting platforms like Airbnb without requiring any showing of mens rea or scienter. The City has impermissibly created a strict-liability crime for publishing advertisements for rentals that prove to be unlawful for one reason or another, even if the hosting platform has no knowledge of the violation. Finally, the Ordinance is impermissibly vague as to what measures hosting platforms like Airbnb must undertake to comply with its provisions.

## PARTIES

10. Plaintiff Airbnb is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California. It maintains a website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

11. Defendant City of Anaheim is an incorporated municipality in southern California.

## JURISDICTION AND VENUE

12. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges violation of its rights under the Constitution and laws of the United States.

13. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

14. Venue is proper under 28 U.S.C. § 1391 because the defendant is located and resides in this judicial district and in the State of California; and because a substantial part of the events giving rise to Airbnb's claims for relief occurred in this judicial district.

15. This action should be assigned to the Southern Division of this Court because the sole defendant, the City of Anaheim, resides in Orange County.

## FACTUAL ALLEGATIONS

### Airbnb

16. Founded in 2008, Airbnb provides an Internet platform through which persons desiring to book accommodations ("guests"), and persons listing unique accommodations available for rental ("hosts"), can locate each other and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

17. Airbnb does not manage, operate, lease or own hosts' accommodations, and it is not a party to the direct agreements between guests and hosts for the booking of rentals offered by hosts. Airbnb's platform provides a means by which hosts can choose to list their rentals; guests can locate those rentals; and hosts and guests can communicate directly to set the terms of their bookings. The platform also provides, through third-party payment processors, a secure payment-processing service to permit hosts to receive payments electronically. In consideration for the use of its platform, Airbnb receives a service fee from both the guest and host, determined as a percentage of the accommodation fee set solely by the host.

18. Hosts, and not Airbnb, decide whether to list their properties and with whom and when to transact, provide the descriptions of their rentals, set their own lengths of stay, and determine their prices. As Airbnb's Terms of Service state, hosts "alone are responsible for any and all Listings and Member Content [they] post."[3] Likewise, the Ordinance itself defines a "hosting platform" as an "entity that facilitates a short-term rental for an owner," i.e., "*allow[s] the owner to offer to list or advertise* the short-term rental on the Internet web site provided or maintained by the hosting platform." § 4.05.030(E) (emphasis added).

---

[3] Airbnb Terms of Service, https://www.airbnb.com/terms (last visited July 20, 2016).

-5-
COMPLAINT OF AIRBNB, INC.

19. Airbnb advises its hosts and guests to be aware of and comply with local laws in listing and renting units listed on Airbnb. The Airbnb Terms of Service reference at their outset parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," and that

> IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES. SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR SHORT PERIODS…. IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS. CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.[4]

20. Similarly, Airbnb's website informs hosts that "it's important for you to understand the laws in your city" and provides an overview of the sorts of regulations that affect Airbnb hosts, including "business licenses," "building and housing standards," "zoning rules," "special permit" requirements, and "taxes." The Airbnb website specifically informs users that "[s]ome cities or counties may require a special permit to rent out your home."[5]

21. As part of the Airbnb Community Compact, the company is committed to helping promote responsible home sharing to make cities stronger. For example, Airbnb discretionarily removes listings that it believes may be offered by hosts with multiple "entire home" listings or by unwelcome commercial operators. If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings.

---

[4] *Id.*

[5] Airbnb, "What regulations apply to my city?", https://www.airbnb.com/help/article/961/what-regulations-apply-to-my-city (last visited July 20, 2016).

-6-
COMPLAINT OF AIRBNB, INC.

## The Ordinance

22. The Ordinance was passed by the City Council on July 12, 2016 and goes into effect on August 11, 2016. The Ordinance amends the City's short-term rental law to impose penalties on hosting platforms, like Airbnb, that list or advertise short-term rentals that do not comply with the City's permit requirements or other City law. The law further prevents the issuance of new short-term rental permits to owners in residential districts, though allows certain short-term rentals that have already received or applied for a permit, or have been authorized by other City laws.

23. In May 2014, the City Council first enacted a law specifically allowing and regulating short-term rentals. The Council added Chapter 4.05 to Title 4 of the Anaheim Municipal Code. Chapter 4.05 expressly allowed short-term rentals—rentals for less than 30 days—within certain zoning districts so long as the owners of those rentals acquired a permit and met other conditions, such as providing a minimum number of parking spots and including the permit number on all short-term rental advertising. *Id.* §§ 4.05.100.0109, 4.05.100.0112. In March 2015, the City expanded the zoning districts in which it would permit short-term rentals. The City requires owners to include their "City issued permit number" in "all advertising," and prohibits them from advertising rentals that do not "comply with" City law. *See* §§ 4.05.100.0109; 4.05.040.010.

24. The City's efforts to regulate short-term rentals have been successful. Over 350 short-term rental owners in the City registered and received permits.[6] The City also employs 31 code-enforcement officers to enforce the law, three of whom monitor hosting platforms, others who monitor neighborhoods, and

---

[6] Joseph Pimentel, *Anaheim the Latest O.C. City to Decide the Fate of Short-Term Rentals*, The Orange County Register, June 27, 2016, http://www.ocregister.com/articles/term-720756-city-short.html (last visited July 24, 2016).

still others who respond to complaints from community members.[7] The City's Director of Planning stated at a City Council hearing that the City's enforcement of its short-term rental law has been "certainly working" and "very effective."[8] The City has recently adopted new measures to further enhance the effectiveness of its enforcement regime, including a "hotline" and website that residents can use to voice concerns or report suspected short-term rental violations.[9] The City Planner has described these and other measures as representing a "switch[] from mostly reactive to proactive enforcement" of the City's short-term rental laws.[10]

25. Despite the success of the City's regulation of short-term rentals, based on "community concerns regarding incompatibility and neighborhood impacts," in September 2015 the City enacted a moratorium on the issuance of short-term rental permits to evaluate the state of short-term rentals in the City.[11] That moratorium was eventually extended through May of 2017. During the moratorium, City staff were tasked with researching potential alternative approaches to short-term rentals in Anaheim.[12] That research culminated with a City Council workshop on February 23, 2016, during which City staff presented findings regarding the state of the short-term

---

[7] Lily Leung & Joseph Pimentel, *Bye-Bye Airbnbs: Short-Term Rental Owners 'Reeling' After Anaheim Says They Have to Shut Down*, The Orange County Register, June 30, 2016, http://www.ocregister.com/articles/anaheim-721181-short-term.html (last visited July 24, 2016).

[8] Video, City of Anaheim City Council Meeting (June 29, 2016) http://anaheim.granicus.com/MediaPlayer.php?view_id=2&clip_id=1648, at 6:59–7:15 (last visited July 24, 2016).

[9] *Id.*

[10] *Id.*

[11] City of Anaheim Planning and Building Department, City Council Agenda Report, June 29, 2016, at 2, available at http://goo.gl/FmduJ6 (last visited July 24, 2016).

[12] *Id.* at 7.

---

-8-
COMPLAINT OF AIRBNB, INC.

rental market in Anaheim and potential paths forward.[13] Following that workshop, the Mayor instructed City staff to prepare the Ordinance.[14]

26. The City Council then initially considered the Ordinance at a special session on June 29, 2016 and passed the Ordinance on July 12, 2016. The Ordinance will go into effect on August 11, 2016.

27. The Ordinance significantly alters the City's regulatory scheme for short-term rentals, by imposing penalties for violations of the short-term rental law not just on owners but also on hosting platforms (and renters). *See* §§ 4.05.130 (providing for liability for "owner[s]," "responsible person[s]," and "hosting platform[s]"); 4.05.030(J) (defining owner); 4.05.030(O) (defining "responsible person" as "an occupant" of the rental).

28. The Ordinance imposes three major obligations on hosting platforms. First, it provides that "[n]o hosting platform shall list or advertise a short-term rental for which the city has not issued a permit." § 4.05.120.010. Second, it requires hosting platforms, "[u]pon written or electronic notification from the city that the city has not issued a permit for a [listed] short term rental," to remove the listing from the platform within ten calendar days. *Id.* The "hosting platform thereafter shall not list or advertise the short term rental without written certification from the city that the required permit has been issued"—even if the rental is in compliance with law. *Id.* Third, the Ordinance states that a "hosting platform shall not [] facilitate"—defined as "*allowing the owner to offer to list or advertise* the short-term rental on the Internet web site"—"the occupancy of a short-term rental if the occupancy will violate *any* ordinance, regulation or law of the city." §§ 4.05.120.020; 4.05.030(E) (emphases added).

---

[13] *Id.*
[14] *Id.* at 3, 5.

-9-
COMPLAINT OF AIRBNB, INC.

29. The Ordinance would hold hosting platforms liable for failing to verify numerous compliance requirements on short-term rental properties before listing rentals. For example, the hosting platform would be liable if the short-term rental property has "double-keyed dead bolt locks" on "exit doors," or lacks a "property address . . . visible from the street and in contrasting colors" and "[s]moke alarms . . . installed in all habitable areas except the kitchen." § 4.05.100.0103. In addition, platforms would be liable if listed properties do not have off-street parking spaces (§ 4.05.100.0112), or a notice in the property regarding trash pick-up days (§ 4.05.100.0120(c)). The Ordinance neither provides nor describes any mechanism by which hosting platforms could determine whether particular short-term rentals are permitted or otherwise in compliance with the City's ordinances, laws, and regulations.

30. In addition, the Ordinance specifies that short-term rental permits will no longer be issued within zoning districts "in which residential uses are a permitted or conditionally permitted use." 4.05.040.030. The law also affects short-term rentals that already have permits: It allows certain "pre-moratorium short term rentals"—defined as rentals issued a permit or with a pending application before August 11, 2016—to continue, but a separate law passed by the City states that pre-moratorium rentals will be phased out in eighteen months.

31. The Ordinance imposes significant penalties on hosting platforms that fail to meet its requirements. First, it provides for criminal liability, stating that "any violation of this chapter may constitute a misdemeanor, which may be subject to the maximum punishment therefor as allowed by law," which under the City's Municipal Code, would include imprisonment of up to six months. § 4.05.130.020; Ana. Mun. Code § 1.01.370. The Ordinance also allows the City to issue "a civil citation to . . . the hosting platform if there is any violation … committed, caused or maintained by [the hosting platform]." § 4.05.130.010. Such civil citations can be issued without "warning or notice to cure" and "[e]ach and every day, or portion

thereof, that a violation . . . exists constitutes a separate and distinct violation." *Id.* A first offense results in a $500 citation, and subsequent offenses result in increased penalties of up to $2,000 per violation. § 4.05.130.0103. Last, the Ordinance declares that failure "to comply with any of the requirements of this chapter" constitutes a public nuisance, punishable by "civil action and/or criminal prosecution." § 4.05.130.030.

32. In passing the Ordinance, the City was well aware that it might conflict with federal law. Indeed, the Ordinance itself contains two specific references to the potential conflict. First, the portion of the Ordinance imposing duties on hosting platforms contains a clause stating that "[t]he provisions of this section shall be interpreted in accordance with otherwise applicable state and federal law(s) *and will not apply if determined by the city to be in violation of any such law(s).*" § 4.05.120.030 (emphasis added). Second, the Ordinance's penalty provision for hosting platforms states that hosting platforms will be subject to administrative penalties "[u]nless prohibited by any state or federal law." § 4.05.130.0103.

33. During a City Council hearing, the City's Director of Planning explained the insertion of these clauses, stating that hosting platforms "have protections under various forms of federal law" and that "if we're in contradiction or if we've been preempted by federal law, we would not be able to issue that citation."[15] A representative from the City Attorney's office, along similar lines, stated that the City was aware that it was regulating "Airbnb here [and] dealing with the hosting platforms. And they do have federal rights . . . with respect to their content," though the representative stated that "it's an issue that we're still looking at."[16] The City has

---

[15] Video, City of Anaheim City Council Meeting (June 29, 2016), http://anaheim.granicus.com/MediaPlayer.php?view_id=2&clip_id=1648, at 19:29–20:22 (last visited July 24, 2016).

[16] *Id.* at 5:04:17–5:05:04.

COMPLAINT OF AIRBNB, INC.

not made any determination as to whether the Ordinance is in violation of federal or state law, and the law remains in force and will become effective on August 11.

34. Instead of punishing Airbnb for publishing non-compliant listings, the City could continue to enforce its short-term rental law directly against hosts who violate it, as provided under the Ordinance. As mentioned, the City has a number of code enforcement officers dedicated to enforcing its short-term rental law, and by the account of the City's own Director of Planning, its enforcement scheme is "certainly working" and has "been very effective."[17]

35. The Ordinance imposes a significant—indeed, impossible—burden on Airbnb to verify that each of the hundreds of Anaheim rental listings on its platform has a valid permit and does not violate any other ordinance, regulation, or law. The Ordinance does not provide a mechanism by which Airbnb can confirm that rentals are permitted or otherwise comply with other law.

36. If the Ordinance goes into effect, it will require Airbnb to screen and remove from its site any listing in which Airbnb is unable to verify that a particular listing has a valid permit and meets the requirements of all other City laws. To comply with the Ordinance, Airbnb likely would need to remove all Anaheim listings from its site, including listings that comply with Anaheim law. There is no other practical way for Airbnb to ensure that it is not in violation of the Ordinance's prohibition on publishing listings that do not comply with all aspects of City law. Removing these listings would cause a substantial disruption to Airbnb's business and have a significant detrimental effect on Airbnb's goodwill and reputation among both hosts and guests, thus threatening irreparable injury to Airbnb's business.

37. The Ordinance also creates the perception that Airbnb's activities are unlawful. This perception will lead to the sort of reputational injury and loss of goodwill that irreparably harms a business.

---

[17] *Id.* at 6:59–7:15.

**CLAIM 1: VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**

38. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

39. Airbnb is a provider of an interactive computer service within the meaning of 47 U.S.C. § 230, because it operates the interactive online platform Airbnb.com. Airbnb provides information to multiple users by giving them computer access to a computer server within the meaning of 47 U.S.C. § 230(f)(2).

40. The third-party hosts that create listings on Airbnb.com are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3). Additionally, the permit numbers hosts obtain and are required to include in their listings are also information developed or created by another information content provider.

41. The Ordinance violates and conflicts with 47 U.S.C. § 230, and Airbnb's rights thereunder, because it imposes duties and obligations on Airbnb that derive from Airbnb's status as a publisher or speaker of third-party content and treats Airbnb as the publisher or speaker of information provided by another information content provider, all in a manner prohibited by section 230.

42. First, the Ordinance imposes criminal and civil liability for Airbnb's publication of third-party rental advertisements for which the City has not issued a permit or that "violate any ordinance, regulation or law of the city." § 4.05.120.020. The liability in these provisions derives from Airbnb's publication of third-party rental advertisements on its website.

43. Second, the Ordinance imposes liability on hosting platforms for failure to *remove* certain listings upon receiving notice from the City. The CDA protects websites from liability for failure to remove objectionable content, so this

-13-
COMPLAINT OF AIRBNB, INC.

basis for liability also violates the CDA.

44. Third, the Ordinance requires Airbnb to verify content associated with a third-party rental advertisement prior to publishing that advertisement. Specifically, Airbnb must verify the existence of a permit number, which hosts are required under the Ordinance to include on their listings, and whether the rental otherwise complies with City law. The act of verifying information associated with a third-party listing is a protected editorial act, and this verification requirement derives from Airbnb's status as a publisher or speaker of third-party content, in violation of the CDA.

45. The Ordinance is a "State or local law that is inconsistent with" section 230, in violation of 47 U.S.C. § 230(e)(3).

46. The enforcement of the Ordinance against Airbnb violates and is preempted by 47 U.S.C. § 230.

47. The Ordinance also interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

48. Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the CDA.

**CLAIM 2: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**
(Content-Based Restrictions on Speech)

49. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

50. The Ordinance is a content-based restriction on Airbnb's speech, including commercial speech, as an online platform for rental advertisements and listings. The Ordinance seeks to impose both civil and criminal penalties on Airbnb

for publishing rental listings in a manner that does not comply with the Ordinance's screening and verification requirements.

51. The restriction on speech imposed by the Ordinance is not narrowly or appropriately tailored to promote a compelling or substantial interest on the part of the City, and is not likely to achieve any such interest in a direct and material way. Instead of seeking to impose liability on hosting platforms like Airbnb for publishing listings, the City could instead enforce its short-term rental laws directly against hosts who rent their residences in a manner that does not comply with the law. The City has not shown, and cannot show, that this less-speech-restrictive alternative would not be an adequate means of achieving the City's policy goals.

52. The Ordinance also will have an impermissible chilling effect on speech because it will prevent Airbnb from publishing any listing for which Airbnb cannot confirm that the listing has a valid permit number and is in compliance with all other City law. As such, the Ordinance will likely force Airbnb to remove listings that may be lawful. Given the substantial criminal and civil penalties for non-compliance, and the practical impossibility of confirming that each listing advertises an occupancy that complies with all applicable City laws, hosting platforms like Airbnb would be forced to refrain from publishing even lawful listings.

53. The enforcement of the Ordinance against Airbnb therefore violates the First Amendment of the U.S. Constitution, as applied to the City by the Fourteenth Amendment.

54. Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Ordinance would conflict with and violate the First Amendment.

**CLAIM 3: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**
(Imposition of Criminal Penalties Without Scienter)

55. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

56. The imposition of criminal penalties under the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Ordinance purports to impose strict criminal liability for the publication of rental listings in the absence of proof of mens rea or scienter.

57. The Ordinance seeks to impose criminal penalties on hosting platforms like Airbnb without requiring a showing that the platform *knew* the published listing at issue advertised an unpermitted or otherwise non-compliant rental. The Ordinance therefore would impose strict criminal liability on Airbnb for publishing any listing that ultimately proves to be unlawful for any reason, even if Airbnb has no knowledge of the violation.

58. Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Act through criminal penalties would conflict with and violate the First Amendment and Due Process Clause of the Fourteenth Amendment.

**CLAIM 4: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS**
(Vagueness)

59. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

60. The imposition of criminal penalties under the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Ordinance is unconstitutionally vague and fails to provide an ordinary person with notice of the conduct it punishes.

61. The Ordinance is impermissibly vague, without limitation, because it fails to inform an ordinary person what it means for a hosting platform to "list or advertise a short-term rental for which the City has not issued a permit" and fails to explain what it means for a hosting platform to "facilitate … the occupancy of a short-term rental if the occupancy will violate any ordinance, regulation or law of the city." §§ 4.05.120.010, 4.05.120.020. The Ordinance is impermissibly vague as to what measures hosting platforms like Airbnb must undertake to comply with these provisions.

62. Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City, whose enforcement of the Act through criminal penalties would conflict with and violate the First Amendment and Due Process Clause of the Fourteenth Amendment.

**CLAIM 5: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

63. Airbnb incorporates all of the preceding paragraphs as if fully set forth herein.

64. This action presents an actual controversy between Airbnb and the City concerning the validity of the Ordinance and its enforceability against Airbnb and other online hosting platforms.

65. Based on the foregoing allegations, Airbnb is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that the Ordinance cannot be enforced against Airbnb because such enforcement would violate the CDA, 47 U.S.C. § 230, the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the First and Fourteenth Amendments of the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

66. Declare that, as applied to Airbnb, the Ordinance violates 47 U.S.C. § 230 and the Supremacy Clause because it would permit the imposition of civil or criminal penalties as a result of the publication of advertisements or other information by third-party hosts on Airbnb.com and impose duties on Airbnb with respect to its protected editorial acts concerning third-party rental advertisements.

67. Declare that, as applied to Airbnb, the Ordinance violates the First and Fourteenth Amendments of the U.S. Constitution because it would place content-based restrictions on speech by imposing civil and criminal penalties on Airbnb as a result of the publication of content, and the restrictions the Ordinance would impose are not narrowly tailored to promote a compelling or substantial interest on the part of the City.

68. Declare that, as applied to Airbnb, the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because it purports to impose strict criminal liability for the publication of listings in the absence of proof of mens rea or scienter.

69. Declare that, as applied to Airbnb, the Ordinance violates the First Amendment and Due Process Clause of the Fourteenth Amendment of the United States Constitution because the Ordinance is unconstitutionally vague and fails to provide an ordinary person with notice of the conduct it punishes.

70. Preliminarily and permanently enjoin the City; its officers, agents, servants, employees, and attorneys; and those persons in concert or participation with them from taking any actions to enforce against Airbnb Sections 4.05.120 and 4.05.130 of Ordinance No. 6374, as well as the other portions of Chapter 4.05 of the Anaheim Municipal Code providing for enforcement and penalties that would penalize Airbnb—including any investigation, arrest, prosecution, or penalty—for: (a) the publication of rental advertisements or other information of third-party hosts on

Airbnb.com; (b) the failure to verify whether a rental listing is associated with a valid permit or is in compliance with other ordinances, regulations, or laws; (c) the failure to remove listings upon notification from the City that such listings do not have a valid permit; or (d) the facilitation of short-term rentals that violate Anaheim law.

71. Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

72. Award Airbnb such other and further relief as the Court deems just and proper.

DATED: July 28, 2016                     MUNGER, TOLLES & OLSON LLP


By:   */s/ Jonathan H. Blavin*
      JONATHAN H. BLAVIN
      Attorneys for Plaintiff Airbnb, Inc.