JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ELLEN M. RICHMOND (State Bar No. 277266)
Ellen.richmond@mto.com
JOSHUA PATASHNIK (State Bar No. 295120)
josh.patashnik@mto.com
JOHN B. MAJOR (State Bar No. 306416)
john.major@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

JOHN W. SPIEGEL (State Bar No. 78935)
john.spiegel@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Plaintiff Airbnb, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| AIRBNB, INC., | Case No. 8:16-cv-1398 |
| Plaintiff, | **DECLARATION OF DAVID OWEN** |
| vs. | |
| CITY OF ANAHEIM, | |
| Defendant. | |

## DECLARATION OF DAVID OWEN

I, David Owen, declare as follows:

1. I am Head of Policy Strategy for Airbnb, Inc. ("Airbnb"). I am over the age of 18 years and maintain an office at 888 Brannan Street, Suite 400, San Francisco, CA 94103. I have personal knowledge of the matters set forth in this declaration, and if called as a witness, I could and would testify under oath as follows.

2. Airbnb, Inc. was founded in 2008. Airbnb provides an Internet platform and online marketplace through which third parties listing their accommodations ("hosts") and third parties desiring to book accommodations ("guests") can locate each other, communicate with each other, and enter into direct agreements to reserve and book travel accommodations on a short and long-term basis.

3. Airbnb's Internet website, located at www.airbnb.com, provides a means by which interested parties can choose to list their accommodations, a means by which hosts and guests can locate and connect with each other, a means for them to communicate and message one another directly on the platform and determine the material terms for their bookings, and also provides, through third-party payment processors, a secure payment processing service to permit hosts to receive payments electronically. In consideration for use of the platform services, Airbnb receives a service fee from the both the guest and from the host, which are determined as a percentage of the accommodation fee set solely by the host.

4. Airbnb has no possessory interest in any of the property or accommodations that third-party hosts may list on the Internet platform. Airbnb therefore is not a proprietor, owner or operator of any accommodation offered by hosts on the Internet platform. Airbnb does not own, manage, operate, or lease hosts' accommodations, and it cannot and does not grant possessory interests or licenses in accommodations offered by hosts.

5. A true and correct copy of Airbnb's Terms of Service, available at https://www.airbnb.com/terms, is attached hereto as Exhibit 1. All users of Airbnb must accept and consent to the Terms of Service in order to post listings on the site or to book reservations. As the Terms of Service state, Airbnb "is not an owner or operator of properties" and "does not own, sell, resell, furnish, provide, rent, re-rent, manage, and/or control properties."

6. Hosts, and not Airbnb, decide whether to list their properties, when to make them available on their calendars, and only hosts set their prices and material terms and decide with whom and when to transact. Airbnb has no control over the physical properties, does not have the right to book or resell or remarket any accommodations for any host, and does not set or otherwise determine the rental price of the accommodations or other terms like security deposits or cleaning fees.

7. Hosts create, and are responsible for, the content that is contained in each individual rental advertisement. Hosts provide the descriptions of their accommodations, set the length of stay of any particular rental, determine the prices and whether the entire property or a portion thereof is available for booking, and decide when and with whom they want to enter into agreements. Airbnb does not control the content that is created by hosts and is not responsible for it. Airbnb makes available to hosts and guests a variety of ancillary services, such as a payment processing platform and liability protection programs, but it is hosts themselves, not Airbnb, who exercise control over the content and settings of each rental listing. As the Terms of Service (Exhibit 1) state, hosts "alone are responsible for any and all Listings and Member Content [they] post."

8. Airbnb advises hosts and guests to be aware of applicable local laws in listing properties and making reservations on the site. For example, the Terms of Service (Exhibit 1) at the outset reference parties' "OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS," stating:

IN PARTICULAR, HOSTS SHOULD UNDERSTAND HOW THE LAWS WORK IN THEIR RESPECTIVE CITIES. SOME CITIES HAVE LAWS THAT RESTRICT THEIR ABILITY TO HOST PAYING GUESTS FOR SHORT PERIODS…. IN MANY CITIES, HOSTS MUST REGISTER, GET A PERMIT, OR OBTAIN A LICENSE BEFORE LISTING A PROPERTY OR ACCEPTING GUESTS. CERTAIN TYPES OF SHORT-TERM BOOKINGS MAY BE PROHIBITED ALTOGETHER.

9. Airbnb also maintains a "Responsible Hosting" section on the Airbnb website. Airbnb provides a variety of general information for hosts about applicable laws and regulations that they should follow, including safety guidelines and business regulations. The webpage entitled "What regulations apply to my city?" informs hosts that "it's important for you to understand the laws in your city," and provides an overview of the sorts of regulations that apply to hosts, including "business licenses," "building and housing standards," "zoning rules," "special permit" requirements, and "taxes." It notes that "[s]ome cities or counties may require a special permit to rent out your home." A true and correct copy of the "What regulations apply to my city?" webpage, available at https://www.airbnb.com/help/article/961/what-regulations-apply-to-my-city, is attached hereto as Exhibit 2.

10. As part of its Community Compact, Airbnb is committed to helping provide solutions tailored to the needs of cities. For example, Airbnb discretionarily removes listings from its website that Airbnb believes may be offered by hosts with multiple entire home listings or are offered by unwelcome commercial operators. If Airbnb is alerted to shared spaces or private rooms that appear to be operated by unwelcome commercial operators or that do not reflect the community vision, it generally will remove such listings. A true and correct copy of the Airbnb webpage describing its Community Compact is attached hereto as Exhibit 3, available at https://www.airbnbaction.com/wp-content/uploads/2015/11/Airbnb-Community-Compact.pdf.

11. I understand that Ordinance No. 6374 (the "Ordinance"), passed by the Anaheim City Council on July 12, 2016 and effective on August 11, 2016, imposes criminal and civil liability on hosting platforms for listing or advertising a short-term rental for which the City of Anaheim (the "City") has not issued a permit or which otherwise violates any ordinance, regulation or law of the City.  I understand that the Ordinance further provides that upon receiving a notification from the City that a rental advertised on its website does not have a permit, a hosting platform must remove the listing within 10 calendar days from the date of the notification, and thereafter must not list or advertise the rental without written certification from the City that the required permit has been issued.  I understand that the Ordinance does not allow the issuance of new short-term rental permits to owners in residential districts, though permits certain short-term rentals that have already received or applied for a permit, or have been authorized by other City laws.

12. For each of these acts, I understand that the Ordinance imposes on hosting platforms criminal penalties of up to six months imprisonment and civil penalties of up to $2,000 per violation per day.  I also understand that the Ordinance provides that when a violation occurs, it is not required that a warning or notice to cure must first be given before a citation may be issued by the City.

13. The City has not proposed any procedures or plan for how compliance by hosting platforms with these provisions of the Ordinance could be achieved.  With respect to the permit provisions, the Ordinance presumably would require a manual process of obtaining permit information from hosts on the hosting platform, or if they do not provide it, some other source, and then verifying that information with the City, prior to publishing the listing.  This is rendered more complicated by the fact that the Ordinance permits certain short-term rentals that already have received or applied for a permit, though bars the issuance of new short-term rental permits to owners in certain districts.

14. Further, even after removing a listing in response to notice from the City that the listing does not have a permit, Airbnb cannot allow a host to list the rental until Airbnb receives written certification from the City that the required permit has been issued. Thus, even if the rental otherwise has a permit and is in compliance with City law, Airbnb could not allow the host to list that rental until it receives written certification from the City.

15. Airbnb also would need to ensure that the rental in the listing is otherwise in compliance with all other City laws and regulations prior to posting the listing. Thus, the Ordinance would require Airbnb to confirm, for example, that a short-term rental does not have double-keyed dead bolt locks on exits doors, has smoke detectors, and has least two off-street parking spaces, all of which I understand to be requirements of City law for short-term rentals. Airbnb would need to inspect physically every property listed on its website in Anaheim to determine whether the rental complies with all laws and regulations of the City.

16. In addition, because Airbnb could not allow any listings in the City to be posted until it had confirmed that the rentals in the listings have a City-issued permit and do not otherwise violate any other law of the City, to comply with the Ordinance Airbnb would have to fundamentally redesign how the Airbnb website operates for hosts creating and managing their listings.

17. Compliance with these provisions would be extremely burdensome, if not impossible. For example, Airbnb does not have the personnel or expertise to inspect properties physically to determine whether they comply with City law. Even if compliance were theoretically feasible—which likely would require a dedicated team of employees devoted fulltime to complying with all of these requirements—establishing, testing and implementing processes to check all listings in the City likely would take a significant period of time and resources.

18. There are at present approximately 629 rentals located in Anaheim listed on Airbnb. In the normal course of business, hosts add new listings, change

-5-
DECLARATION OF DAVID OWEN


the status of listings and deactivate listings continually. Accordingly, the burden to Airbnb of complying with the Ordinance's requirements is not solely measured by the static number of listings at a single point in time.

19. Complying with the Ordinance also would be highly disruptive to the operation of the Airbnb website. Given the extremely burdensome measures needed to comply with the Ordinance, and to avoid the significant criminal and civil penalties discussed above, Airbnb very likely would need to remove all Anaheim listings from its website upon the effective date of the Ordinance (which I understand to be August 11, 2016). This would include the removal of listings that may otherwise be in compliance with City law as Airbnb will not have the ability to confirm that the rental for the listing has a valid permit and otherwise complies with all aspects of City law.

20. The removal of all Anaheim listings from the Airbnb website, including those that otherwise may comply with the law, would cause a significant disruption to Airbnb's operations and would substantially injure the substantial business goodwill that Airbnb has generated from the hosts and guests who use its platform in Anaheim. Airbnb has cultivated a significant amount of trust and goodwill with consumers who have come to rely on its platform for their listings and lodging accommodations. If Airbnb is forced to remove all or a substantial number of Anaheim listings, that trust and goodwill will likely be irreparably lost, and such customers may never return to Airbnb even if the Ordinance is ultimately ruled invalid.

//

1     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of July, 2016, in San Francisco, California.

By: _____

DAVID OWEN